UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM C. FISHER, a single person, on behalf of his minor child, L.F., <br><br>    Plaintiffs, <br><br>    v. <br><br>STATE OF WASHINGTON; WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES; WASHINGTON DEPARTMENT OF CHILD PROTECTIVE SERVICES; DIVISION OF CHILDREN AND FAMILY SERVICES; CLIFF PETRIE; FELEISHA WRIGHT; and JOHN/JANE DOES 1-10, <br><br>    Defendants. | NO. 2:16-cv-00108-SAB <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff William Fisher (Fisher) filed a Complaint on April 4, 2016 on behalf of himself and his minor child, L.F alleging violations of 42 U.S.C. § 1983 and negligence. ECF No. 1. Defendants moved for summary judgment in all respects. A hearing was held on February 10, 2017, in Spokane, Washington. Plaintiff was represented by Douglas Phelps. Defendants were represented by Jarold Cartwright. Based on the foregoing reasons, the Court **grants** Defendants' Motion for Summary Judgment.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +1

## FACTS

The relevant facts are largely undisputed. Fisher and Sabrina McCulley (McCulley) were married on February 25, 2012. On July 20, 2012, McCulley, six months pregnant at the time, disappeared while Fisher was working in North Dakota. On October 10, 2012, L.F. was born to McCulley in Spokane, Washington; L.F.'s father was not identified on the birth certificate. Following L.F.'s birth, McCulley maintained that Jeremiah Martin (Martin) was the biological father of L.F., denying Fisher's paternity. However, Fisher is identified as the legal father of L.F. in a subsequent Dependency Petition filed in Spokane County Superior Court. ECF No. 14-3.

On April 8, 2013, the Department of Social and Health Services (DSHS) received a report that McCulley had attempted suicide by overdosing on medication. ECF No. 14-3. L.F. was left with McCulley's live-in boyfriend, Martin, who has an extensive history with Child Protective Services (CPS), and concerns were expressed about his ability to care for the child. *Id.* After this referral, Nadean Roper (Roper) arrived at the McCulley/Martin home to investigate the report and found police cars outside the home. ECF No. 16. Police officers were attempting to serve a temporary custody order that Fisher had obtained for L.F., but after finding a valid no-contact order that McCulley had against Fisher, the officers refused to enforce either order until the confusion was resolved. *Id.* At some point that day, Roper received a call from Spokane County Superior Court Commissioner Tony Rugel, who had signed the temporary parenting plan for Fisher; Commissioner Rugel expressed concerns regarding L.F.'s safety. *Id.* Thus, Commissioner Rugel directed Roper to remove L.F. from the McCulley/Martin home pending a subsequent shelter care hearing. *Id.*

On April 9, 2013, the court issued an order authorizing L.F. to be taken into custody and placed in shelter care until a hearing could be held on April 11, 2013. *Id.* Roper filed a Dependency Petition that same day and placed L.F. in the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +2

Clifford Petrie (Petrie) foster home. The Petition alleged that L.F. was dependent according to Wash. Rev. Code. § 13.34.030(6) stating that "the child is abused or neglected as defined in Chapter 26.44 RCW," and that "the child has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." ECF No. 14-3. The Petition referenced the aforementioned suicide attempt by McCulley and Martin's extensive CPS history. The Petition also contained allegations that McCulley had reported that there had been domestic violence throughout her relationship with Fisher and that she was forced into the marriage against her will. *Id.* McCulley wrote a letter stating that Fisher has connections to white supremacy groups and refused to allow her to leave or to have contact with her family. *Id.* The Petition further stated that Fisher has a felony criminal history and that he was last arrested in January 2013 after failing to comply with requirements for a Driving Under the Influence conviction. The Petition likewise references that a no-contact order protecting McCulley and her children from Fisher are in place. *Id.*

On April 11, 2013, Spokane County Superior Court Judge John O. Cooney conducted a Shelter Care Hearing, at which Fisher and his attorney attended. ECF No. 14-14. Judge Cooney found that the risk of imminent harm to L.F. "establishes reasonable cause for the continued out-of-home placement of the child pending the fact finding hearing" and that "[r]eturning the child to the home would seriously endanger the child's health, safety, and welfare. *Id.* Judge Cooney ordered L.F. to be placed in shelter care because "there is reasonable cause to believe [that] the child has no parent, guardian, or legal custodian to provide supervision or care for such child." *Id.* Judge Cooney further found that a relative or suitable person was not available or willing to care for the child. *Id.* Specifically, Judge Cooney found that "[r]elease of the child to Mr. Fisher would put the child at serious risk of substantial harm based on allegations of domestic violence, criminal history + the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +3

fact that placement in Idaho would be unsupervised." *Id.* Fisher was permitted supervised visitation two times per week for two hours. Paternity testing was ordered to determine L.F.'s biological father and Fisher was ordered to participate in services for chemical dependency, random UA testing, and a parenting assessment. *Id.*

Between May 2013 and July 2013, the court continued L.F.'s shelter care pending final hearing three times. ECF No. 14. During this time, Fisher had been participating in some of the required services, but informed social worker Faleisha Wright (Wright) that he would not participate in domestic violence counseling. *Id.* The contested shelter care hearing was held on July 9, 2013, and subsequently continued for a second day due to time constraints. Fisher, upset with the continuance, contacted Wright to request her supervisor's phone number stating that he was "going to change more than the court order." ECF No. 18. On July 30, 2016, Fisher emailed Wright stating that he would not be "doing any treatments other than parenting. It [(the hearing)] was invalid and biased." *Id.* At the continued hearing on August 27, 2013, Fisher discharged his appointed attorney and proceeded pro se. ECF No. 14-11.

At the conclusion of the hearing, Spokane County Superior Court Commissioner Val Jolicoeur entered an Order of Dependency and Order of Disposition as to the father of L.F., Fisher. Commissioner Jolicoeur found that dependency had been established and that no parent or guardian was available to care for the child because manifest danger existed that the child would suffer serious abuse or neglect if not removed from the home. ECF No. 14-9. Specifically, the Order noted that reasonable efforts to eliminate the need to prevent or remove L.F. from the home were unsuccessful because (1) the health, safety, and welfare of L.F. could not be adequately protected in the home, and (2) Fisher refused to complete the offered services, which prevented L.F.'s possible return home. *Id.* Fisher was ordered to participate in counseling to address anger

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +4

management and domestic violence, family therapy, and parenting training. *Id.* The Order was entered over Fisher's objection. *Id.*

On November 12, 2013, a review hearing was held and a Permanency Planning Hearing Order was entered ordering continued out-of-home placement in foster care. ECF No. 14-2. Specifically, the Order noted that Fisher refused to comply with the ordered inpatient treatment, random UA testing, mental health treatment/individual counseling, and anger management and/or a domestic violence assessment. *Id.* The Order was subsequently affirmed but revised with regard to participation in domestic violence and chemical dependency treatment. On January 15, 2014, an order was entered directing L.F.'s transition home to Fisher within 30 days, and placement occurred on February 7, 2014. ECF Nos. 14-12, 14-13. On August 6, 2014, L.F. was permanently placed with Fisher. ECF No. 14-13.

During placement in the Petrie foster home, L.F. progressed well. On September 9, 2013, the foster parents took L.F. to doctor because she had been experiencing a fever and rash. The initial diagnosis was Scarlet Fever and a variation of strep throat. L.F. was treated with antibiotics. Later, the foster family returned to the doctor because L.F. had not recovered. It was determined that L.F. had developed Methicillin Resistant Staphylococcus Aureus (MRSA) and the course of antibiotics was changed. The Petries informed Wright that L.F. had a "staph infection," which they believed was caused by her getting stung by a bee. Wright was not made aware that L.F. was diagnosed with MRSA. Subsequently, Fisher called Wright and confronted her about supposedly lying to him about L.F.'s diagnosis.

Fisher does not dispute these facts, but adds that placement with his sister in Idaho was considered and approved, yet the child was placed with the Petries instead. ECF No. 20. L.F. was ultimately not placed with Fisher's sister due to how far away she lived and concerns that placement in Idaho would interfere with

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +5

both parents' ability to engage in services and make progress if the child was a significant distance away. ECF No. 18. Fisher also contends that the Petrie home was licensed and authorized for placement of two children, however, when Wright visited the Petrie home on July 18, 2013, there were three foster children in the home and no action was taken. ECF No. 20. Defendant points to the Declaration of Wright which contains an entry on July 18, 2013 at 7:11 a.m. that "health and safety completed in foster home. Present at visit were foster mom, [redacted] and two other foster children. ECF No. 18. Additionally, it is undisputed that Petrie was licensed to provide care to two children. ECF No. 15.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact *and* that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. *See also Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) ("[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits.").

When considering a motion for summary judgment, the Court neither weighs evidence nor assesses credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. When relevant facts are not in dispute, summary judgment as a matter of law is appropriate, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), but "[i]f

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +6

reasonable minds can reach different conclusions, summary judgment is improper." *Kalmas v. Wagner*, 133 Wn. 2d 210, 215 (1997).

## ANALYSIS

### Section 1983

Defendants move for summary judgment on Plaintiff's § 1983 claim, arguing that (1) the court lacks subject matter jurisdiction under the *Rooker/Feldman* doctrine; (2) the claims are barred by res judicata and/or collateral estoppel; (3) Defendants are not "persons" under 42 U.S.C. §1983 and that negligence is not sufficient to sustain an action under § 1983; (4) prosecutorial and/or quasi-judicial immunity; and (5) qualified immunity. Because Plaintiff conceded at oral argument that no Defendant is properly subject to liability under § 1983, Defendants' remaining arguments are not considered.

A § 1983 claim requires two essential elements; "(1) the conduct that harms the plaintiff must be committed under color of state law (i.e., state action), and (2) the conduct must deprive the plaintiff of a constitutional right." *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). Parties to a § 1983 suit are entitled to immunities that existed at common law. *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The Eleventh Amendment bars such suits unless the State has waived its immunity or Congress expresses intent to override that immunity. *Id.* at 66. It is well settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and, thus, cannot be subject to § 1983 liability. *Id.* at 71.

Fisher has named the State of Washington, Washington State DSHS, and Washington State CPS, Division of Child and Family Services, as Defendants in this lawsuit. He has also sued individual Defendant Wright and individual

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +7

Defendant Petrie in their official capacities. At oral argument, Plaintiff conceded that the State and its agencies are not persons for § 1983 purposes, and further admitted that Wright and Petrie were sued only in their official, not individual, capacities, which is equivalent to suing the State itself under a § 1983 analysis. As it is well established that all Defendants are not "persons" under prevailing law, they are immune from § 1983 liability. Accordingly, all § 1983 claims are dismissed as a matter of law.

**Negligence**

Fisher further claims that Defendants were negligent because L.F. contracted MRSA while in Petrie's care. Negligence requires proof of four elements: duty, breach, causation, and damages. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275 (1999). Plaintiff's negligence allegations must likewise fail because there is no genuine issue of material fact regarding the elements of breach and proximate cause. Plaintiff has proffered no evidence supporting his contentions that Defendants Wright or Petrie were at fault for L.F. contracting MRSA. Indeed, there is no evidence in the record before the Court as to when or where L.F. developed MRSA. Because Plaintiff has not established a genuine issue of material fact as to his claim that Wright and Petrie were negligent for allowing L.F. to contract MRSA, Defendants' motion for summary judgment is granted.

//
//
//
//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +8

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

2. Judgment shall be entered in favor of Defendants.

3. All previously set court dates, including the trial date, are **STRICKEN**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, enter judgment, provide copies to counsel, and **close** this file.

**DATED** this 21st day of February 2017.



_____
Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** +9